UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:10CV-00113-JHM

JEANETTE McGUIRE                                                                PLAINTIFF

V.

MICHAEL ASTRUE,
Commissioner of Social Security                                                 DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Travis Holtrey. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 14 and 19, respectively. In addition, the plaintiff has filed a copy of certain medical evidence, which the Commissioner has construed as a motion for a remand for consideration of new and material evidence pursuant to "sentence six" of 42 U.S.C. § 405(g) (Docket Entry No. 15). This matter has been referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on March 25, 2008, by Administrative Law Judge ("ALJ") William Hafer. In support of his decision denying Title II benefits, Judge Hafer entered the following numbered findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.

2. The claimant has not engaged in substantial gainful activity since May 15, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1571 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, coronary artery disease with stent placement, and Idiopathic Parkinson's disease with

mild symptoms (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she can frequently stoop, kneel, crouch, crawl, and climb stairs and ramps, but she can never climb ladders, ropes, or scaffolds or work at unprotected heights.

6. The claimant is capable of performing past relevant work as an assembly line worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2004, through the date of this decision (20 CFR 404.1520(f)).

(Administrative Record (AR), pp. 16-20).

**Governing Legal Standards**

1. The Court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the Court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must examine the evidence in the record taken as a

whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the Court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A severe impairment is one that "significantly limits" a claimant's ability to do "basic work activities [that are] necessary to do most jobs [such as] walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is deemed to be non-severe. *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has

3

more than a de minimis, or significant, effect on the claimant's ability to work is severe, and the sequential evaluation should proceed to Step #3. Nevertheless, the severity step can and should continue to function as an "administrative convenience to screen out claims that are totally groundless solely from a medical standpoint." *Higgs v. Secretary*, 880 F.2d 860, 863 (1988). In addition, the severe impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). If the evidence supports a finding that the claimant's age, education, work experience, and residual functional capacity (used to determine the claimant's maximum sustained work capability for sedentary, light, medium, heavy or very heavy work as defined by 20 C.F.R. §§ 404.1567 and 416.967) coincide with all the criteria of a particular rule of Appendix 2 of Subpart P, the Commissioner must decide whether the claimant is disabled in accordance with that rule. Section 200.00(a) of Appendix 2; 20 C.F.R. §§ 404.1569a(b) and 416.969a(b).

If the claimant is found to have, in addition to the exertional impairments resulting in his

maximum residual strength capabilities, nonexertional limitations, e.g., mental, sensory, or skin impairments, postural or manipulative limitations, and environmental restrictions; the Commissioner may rely on the particular rule only as a "framework for decisionmaking." Section 200.00(e)(1) and (2) of Appendix 2; 20 C.F.R. §§ 404.1569a(d) and 416.969a(d); *Kimbrough v. Secretary*, 801 F.2d 794 (6th Cir., 1986). Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

### The Plaintiff's Medical-Vocational Profile

The plaintiff was born on December 1, 1946. Therefore, she was 61 years old on March 25, 2008, when the ALJ issued his decision. The regulations classify an individual age 50-54 as of "advanced" age and an individual age 60 or older as "closely approaching retirement" age. 20 C.F.R. § 404.1563(e). The plaintiff has an eleventh-grade education (AR, pp. 91 and 380). "We generally consider that a 7th grade through the 11th grade level of formal education is a limited education." 20 C.F.R. § 404.1564(b)(3). The plaintiff testified that she worked for approximately 33 years on the assembly line at Whirlpool (AR, p. 381). The work consisted of "making up these things that go[] in the box ... I just lifted these out and made them up, and put them back in the box" (AR, p. 382).

Although no vocational expert (VE) testified at the administrative hearing, we observe as follows:

1. Assembly line work similar to that described by the plaintiff is typically classified as "semi-skilled" or "unskilled." See, for example, *Her v. Commissioner*, 203 F.3d 388, 391 (6th Cir., 1999) (Her could perform "unskilled, repetitive jobs, such as ... working on an

5

assembly line doing repetitive three and four-step tasks") and *Gerstler v. Astrue*, 2011 WL 690458 (W.D.Ky.) (Gerstler could perform work as an "assembly line worker ... characterized by [the] VE as medium and semi-skilled").

2. "For a finding of transferability of skills to light work for persons of advanced age who are closely approaching retirement age (age 60 or older), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." Rule 202.00(f) of Appendix 2 of the regulations, the so-called medical-vocational guidelines, or grid rules.

3. Therefore, if the ALJ had found that the plaintiff has a maximum exertional capacity for "light" as opposed to "medium" work, it appears that a finding of disability would have been required pursuant to Grid Rules 202.01 and/or 202.02.

4. The plaintiff was unrepresented by counsel at the administrative hearing.

This case was denied at the fourth step of the sequential evaluation process based upon a finding that the plaintiff has the residual functional capacity (RFC) to perform "medium" work and can perform her past relevant work at Whirlpool. ALJ Finding Nos. 5 and 6, supra. The full range of "medium" work contemplates an ability to engage in substantial physical activities including the following:

1. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weight up to 25 pounds." 20 C.F.R. § 404.1567(c).

2. "Frequent" is a term of art in Social Security disability cases that means "occurring from one-third to two-thirds of the time." Social Security Ruling (SSR) 83-10. Therefore, "[a] full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting

6

or carrying objects weighing up to 25 pounds." Id.

3. "The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity." Id.

4. "Use of the arms and hands is necessary to grasp, hold, and turn objects ...." Id.

5. Although it does not appear to be required for the full range of medium work, the ALJ also found that the plaintiff can frequently kneel, crouch, crawl, and climb stairs and ramps. See ALJ Finding No. 5, supra.

In his written decision, the ALJ summarized certain aspects of the plaintiff's medical history which the Magistrate Judge concludes arguably are incompatible with the ALJ's finding that the plaintiff can perform the full range of medium work, to-wit (ALJ's decision at AR, pp. 16 and 19):

> On July 28, 2004, the claimant was diagnosed with lumbalgia with buttock pain and heaviness in the right lower extremity with difficulty lifting. A Magnetic Resonance Imaging (MRI) study of the lumbar spine, dated September 16, 2004, revealed multilevel spondylosis; canal stenosis at the L4-L5 level secondary to eccentric disc bulge with moderate neural foraminal narrowing; and multilevel disc bulges involving all levels of the lumbar spine, including L1 through L4, and L5-S1 [MRI at AR, p. 297].
>
> (AR, p. 16).
>
> ... Alan Johnson, M.D., noted on March 3, 2006, that the claimant had pain with straight leg raising in the left hip and leg; pain with overhead tasks and activities; and difficulty with prolonged standing or sitting. On March 13, 2006, the claimant was diagnosed with sciatica with symptoms of limited range of motion, pain, discomfort, and radicular symptomatology. The claimant reported difficulty with walking on December 11, 2006, and increased low back pain from sitting to standing on January 3, 2007.
> ...
> On July 19, 2006, the claimant reported a tremor of her lower left with occasional imbalance and falling. On November 15, 2006, the claimant reported low back pain exacerbated by walking and lying down....

> On July 26, 2006, the claimant was assessed by Roderick Warren, M.D., a neurologist, for her lip tremor. At that time, the claimant indicated that she has no problems speaking or using her arms or legs, but she fell down when she stooped due to back pain.
>
> (AR, p. 19).

In addition, the plaintiff testified as follows:

1. She was unable to perform the standing/walking at Whirlpool because "my back couldn't take that job [especially] in my left back side [and] my feet would feel like they are going to sleep" (AR, pp. 383 and 386). She can be on her feet "about three minutes" (AR, p. 385). She needs a cane to walk and get up from chairs (AR, p. 395).

2. At the hearing, she had to stand up due to pain. She agreed that she can sit for "maybe 25 minutes" at a time (AR, p. 385).

3. "Sometimes" she cannot pick up even a gallon of milk because of shaking in her hands due to Parkinson's disease (AR, p. 385). In his written decision, the ALJ stated that he "observed that the claimant ... had tremors in her lips and other parts of her body" (AR, p. 18).

4. The Magistrate Judge concludes that acceptance of the above testimony in its entirety is incompatible with the ALJ's finding that the plaintiff retains the capacity to perform the full range of medium work.

### **The ALJ's RFC Was Supported by Probative Medical Evidence**

In his written decision, the ALJ rejected the plaintiff's testimony to the extent it was incompatible with the requirements of "medium" work. In support of his RFC for medium work, the ALJ gave "substantial weight" to the completion of the standard physical assessment forms by the non-examining State agency program physicians (AR, pp. 20, 278-279, and 286-287). On April 26, 2005, Dr. Irlandez completed the form in a manner consistent with the requirements of medium work (AR, pp. 285-293). On July 8, 2005, Dr. Stubbs adopted Dr. Irlandez' prior findings without change (AR, pp. 277-284).

Dr. Irlandez, in turn, stated that he gave significant "weight" to a medical report from neurologist Mike Chou, based upon the plaintiff's consultation with Dr. Chou on one occasion on December 30, 2004, due to complaints of low back pain since the spring of 2004 (AR, pp. 287 and 290). Dr. Irlandez noted that the plaintiff told Dr. Chou that "since she retired, she has not had any pain whatsoever" and that Dr. Chou predicted that the plaintiff's "pain will probably dissipate and not cause her much problems." In addition to what Dr. Irlandez correctly noted, Dr. Chou stated as follows (AR, p. 296):

> I reviewed the MRI of her low back which does show multilevel degenerative changes somewhat worse at L4-5, but also present at all other levels. At L4-5, there is a concentric bulge with ligamentum hypertrophy causing a little bit of central stenosis and lateral recess stenosis. ... The patient may well have pain generators at multiple facet joints and also discogenic pain.

Drs. Chou and Irlandez and the ALJ, all specifically cite the above findings from the lumbar MRI taken on September 16, 2004 (Chou at AR, p. 296, Irlandez at AR, p. 287, ALJ at p. AR, p. 16, MRI at AR, p. 297). We conclude that the ALJ's finding that the plaintiff can perform medium work is supported by probative medical evidence in the record.

## Limited Scope of Judicial Review

Notwithstanding the foregoing conclusion that the ALJ's finding that the plaintiff can perform medium work is supported by probative medical evidence, we remain troubled by the following considerations, which suggest that there may have not been a full and fair development of the evidence in this case:

1. The plaintiff was unrepresented at the administrative hearing. It is well-accepted that the ALJ has an affirmative duty to develop the record due to the non-adversarial nature of Social Security administrative proceedings. See *Heckler v. Campbell*, 461 U.S. 458 (1983). This duty is especially important and the court should scrutinize the record with care where the claimant appears before the ALJ pro-se. See *Lashley v. Secretary*, 708 F.2d 1048 (6th Cir., 1983).

2. The need to fairly develop the record was particularly strong in this case because, for the reasons explained at pages 5 through 6 of this report, unless the ALJ found that the plaintiff can perform medium work, it appears that a finding of disability would have been required pursuant to Grid Rules 202.01 and/or 202.02.

3. It is undisputed that the plaintiff suffers from degenerative changes at every level of the lumbar spine and may well have pain generators at multiple facet joints (AR, p. 296).

4. There is a lack of evidence that the state agency program physicians, upon whom the ALJ relied for his RFC for medium work, were aware of or attempted to take into account the effects of the plaintiff's progressive Parkinson's disease. At the hearing on August 28, 2007, the plaintiff testified that she had already reached the point of needing a cane and at times was unable even to pick up a gallon of milk. In his written decision, the ALJ himself reports having observed "tremors in her lips and other parts of her body" at the administrative hearing (AR, p. 18).

5. As described in detail at Page 7 of this report, medium work requires substantial abilities

to lift/carry, stand/walk, stoop, and manipulate objects.

6. The ALJ's own recitation of the medical evidence indicates that the plaintiff repeatedly reported to her treating sources serious "difficulty" with lifting, standing, walking, and even losing her balance and falling when on her feet too long or attempting to stoop (AR, pp. 16 and 19). The ALJ did not find that these reports were incredible.

Nevertheless, we are mindful of our limited role upon judicial review, to-wit:

1. Because this case was denied at the fourth step of the sequential evaluation, arguably, the application of the Appendix 2 "grid" rules at Step 5 is immaterial.

2. Like the plaintiff and the ALJ, this Court is not qualified to interpret raw clinical data and diagnoses in functional terms. "[T]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir., 1988). We are somewhat tempted to "play doctor" and to interpret the lumbar MRI results and treatment records as a whole as incompatible with an ability to perform a full range of medium work. Nevertheless, the state agency physicians apparently were of the opposite opinion. "Common sense can mislead; lay intuitions about medical phenomena are often wrong." *Schmidt v. Secretary*, 914 F.2d 117, 118 (7th Cir., 1990). Nor are we in a position to opine about the likely extent of the plaintiff's Parkinson's symptoms at the time of the ALJ's decision.

3. The evidence indicates only that the plaintiff reported to her treating sources "pain ... difficulty ... discomfort ... heaviness" and other subjective symptoms in relation to her abilities to lift, stand, walk, and stoop. The treating sources did not opine specific restrictions based upon the objective medical evidence.

4. Notwithstanding our lingering doubts, we are constrained by our limited scope of judicial review to conclude that the ALJ's RFC finding for medium work is supported by substantial medical

11

evidence or, at least, the plaintiff has failed to identify any probative medical evidence in the administrative record to the contrary.

**Credibility Assessment**

As indicated above, the plaintiff reported to her treating sources "pain ... difficulty ... discomfort ... heaviness" and other subjective symptoms in relation to her abilities to lift, stand, walk, and stoop. While the treating sources did not opine specific restrictions, the plaintiff testified, among other things, that she can be on her feet for no more than three minutes at a time and sometimes she cannot pick up even a gallon of milk. The plaintiff argues that the ALJ's credibility assessment does not comport with governing legal standards.

In Social Security disability cases, an important issue is often the degree of limitations caused by pain and other subjective symptoms alleged by the claimant. In such cases, because tolerance to pain is very much an individual matter, the ALJ, in effect, is called upon to assess the claimant's credibility. *Villareal v. Secretary*, 818 F.2d 461, 463 (6th Cir., 1987). Therefore, the standards for evaluating the credibility of a claimant's testimony and for determining her RFC in light of her subjective complaints are essentially the same.

20 C.F.R. § 404.1529(c) describes the kinds of evidence that an ALJ should consider when determining the credibility of an individual's statements:

 1) Daily activities;

 2) The location, duration, frequency, and intensity of pain or other symptoms;

 3) Precipitating and aggravating factors;

 4) The type, dosage, effectiveness, and side effects of any medication taken to alleviate your pain or other symptoms;

 5) Treatment, other than medication, received for relief of pain or other symptoms;

6) Any measures used to relieve pain or other symptoms (e.g., lying flat on the back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

The credibility determination rests with the ALJ and not a reviewing court. *Murphy v. Secretary*, 801 F.2d 182, 184 (6th Cir., 1986). Hence, absent a compelling reason, a reviewing court should not disturb an ALJ's credibility findings. *Smith v. Secretary*, 307 F.3d 377, 379 (6th Cir., 2001). Nevertheless, "while credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence." *Rogers v. Commissioner*, 486 F.3d 234, 249 (6th Cir., 2007). In this regard, SSR 96-7p provides as follows *(emphasis added)*:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. **It is not sufficient to make a conclusory statement** that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain **specific reasons** for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

An ALJ "may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir., 1990). In other words, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among

13

the medical reports, claimant's testimony, and other evidence." *Walters v. Commissioner*, 127 F.3d 525, 532 (6th Cir., 1997).

On one hand, the Magistrate Judge concludes that the ALJ did not err in rejecting the plaintiff's relatively extreme testimony of inability to be on her feet for more than three minutes at a time and to lift even a gallon of milk as well as her somewhat non-specific report to Dr. Warren of falling down when she stoops due to back pain. On the other hand, this Court has a heightened duty to scrutinize the record in this case in which the plaintiff appeared before the ALJ pro-se. See *Lashley*, supra. From the perspective of this heightened duty, the undersigned concludes that the ALJ's credibility analysis appears to go from rejecting one extreme to accepting another. Specifically, the ALJ found that the plaintiff is able to be on her feet for six out of eight hours per workday, lift/carry up to 50 pounds at a time with frequently lifting/carrying of objects weighing up to 25 pounds, and "can frequently stoop, kneel, crouch, crawl, and climb stairs and ramps." Finding No. 5.

We are unable to locate specific, non-conclusory reasons in the ALJ's written decision in support of these relatively extreme capacities. The ALJ does cite some of the plaintiff's daily activities that, at least facially, seem to be substantial. However, the dispositive question in this case is not whether the plaintiff can perform any, but rather medium, exertional activities. The ALJ notes that the plaintiff drives, attends church two times a week, sings in the choir, shops for groceries, cooks, dusts, and even has been known to move furniture (AR, p. 18). However, a closer look at the details, qualifications, and context renders the ALJ's list of supposedly substantial activities a bit hollow. The furniture moving resulted in a need for medical treatment (AR, p. 133). Indeed, the list appears, for the most part, to have been generated at the hearing in response to leading questions such as the following (AR, p. 387):

14

*ALJ:* Who does the dusting, mopping, and vacuuming? I hear that kind of groan.

*Plaintiff:* Well, I try to do it the best I can.

*ALJ:* Um-hum. It's hard for you?

*Plaintiff:* Yes.

In addition, the ALJ's decision states that the plaintiff "has had conservative treatment, mostly chiropractic" (AR, p. 18). However, there is no indication of what more the plaintiff could or should have done to be deemed incapable of sustaining medium work. From the standpoint of our heightened duty to scrutinize the record in this case, we submit that this case presents an unavoidable impression that the ALJ found the plaintiff's testimony and her subjective symptoms to be credible only to the extent that it does not preclude an ability to perform the full range of medium, as opposed to light or sedentary, work simply to avoid a finding of disability pursuant to the Appendix 2 "grid" rules. The ALJ's credibility assessment does not comport with governing legal standards.

## The Appropriate Remedy

*Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir., 1994), held as follows:

> If a court determines that substantial evidence does not support the [ALJ's] decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.... A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking.

Although perhaps tempting, for the reasons indicated at pages 11 through 12 of this report, our limited scope of the judicial review counsels against simply finding that the plaintiff has a maximum exertional capacity for light work and, hence, is disabled pursuant to Grid Rules 202.01 and/or 202.02. We shall recommend that this matter be remanded for a new credibility assessment,

particularly as it bears upon the determination of the plaintiff's maximum exertional capacity, and for further administrative proceedings.

## New and Material Evidence

Pursuant to "sentence six" of 42 U.S.C. § 405(g), this court has jurisdiction to remand this matter to the Commissioner for consideration of any "new evidence which is material" if "there is good cause for the failure to incorporate such evidence into the record" as of the date of the Commissioner's final decision. As indicated in the first paragraph of this report, in addition to seeking judicial review, the plaintiff has filed a copy of certain medical evidence, which the Commissioner has construed as a motion for a "sentence six" remand (Docket Entry No. 15).

After receiving the unfavorable decision, the plaintiff retained counsel to appeal the denial of her claim. On May 8, 2008, after the ALJ's decision on March 25, 2008, the plaintiff was admitted to St. Mary's Hospital, and Robert T. Vraney, M.D., performed a decompression/fusion at the L4-L5 level. On April 21, 2010, the plaintiff completed the standard physical assessment form in a manner that is incompatible with performance of medium work. In support of his assessment, Dr. Vraney cited the following clinical bases:

> Back surgery caused by spondylolisthesis. Jeanette had a decompression/fusion back [surgery] in May 2008. Doing full activities could cause severe damage to her back and reverse the progress she's made. Spinal stenosis and acquired spondylolisthesis.

In addition, on April 23, 2010, the plaintiff's family physician, Donald Brake, completed the same form, finding that the plaintiff cannot perform medium work. In support of his findings, Dr. Brake noted the presence of "Tremor and weakness. Patient has Parkinson's disease. ... It affects her ability to ambulate." The Magistrate Judge observes that both RFC forms were rendered prior to September 30, 2010, when the plaintiff's insured status for Title II benefits expired. ALJ's Finding No. 1.

16

The plaintiff argues that the foregoing evidence, which she did not submit to the ALJ in support of her claim, but which counsel allegedly submitted to the Appeals Council is new and material evidence. The Magistrate Judge concludes that it is legally irrelevant whether the evidence was first submitted to the Appeals Council or to this Court. Evidence submitted by a claimant after the Commissioner's final decision may be considered by a reviewing court only for the limited purpose of determining whether to grant a "sentence six" remand. *Cline v. Commissioner*, 96 F.3d 146 (6th Cir., 1996). The party seeking remand bears the burden of proving that it is proper. *Sizemore v. Secretary*, 865 F.2d 709, 711-712 (6th Cir., 1988). First, the movant must demonstrate that the evidence is material. Evidence is material if there is a "reasonable probability that the [ALJ] would have reached a different disposition of the disability claim if presented with the new evidence." Id. Cumulative evidence is not material. *Young v. Secretary*, 925 F.2d 146 (6th Cir., 1990).

As noted above, the State agency program physicians, whose RFC findings for medium work the ALJ relied upon, rendered their opinions in the absence of evidence that they were aware of or attempted to take into account the effects of the plaintiff's Parkinson's disease, which the plaintiff testified had reached the point of sometimes rendering her unable even to pick up a gallon of milk. In addition, the program physicians gave significant "weight" to Dr. Chou's prediction that the plaintiff's "pain will probably dissipate and not cause her much problems" (AR, pp. 290 and 296). The new evidence indicates that, in fact, the plaintiff's pre-existing spondylolisthesis, degenerative changes at <u>every</u> level of the lumbar spine, etc., necessitated decompression / fusion back surgery in May of 2008, just three years after Dr. Chou gave his perhaps overly-optimistic opinion in December of 2004. The Magistrate Judge concludes that the evidence is material.

In addition, the party seeking remand must show good cause for late submission of the

evidence. We conclude that, in light of the plaintiff's pro-se status and the ALJ's heightened duty to develop the record in this case (see *Lashley*, supra), the equities favor a conclusion that the plaintiff has adequately demonstrated good cause for not sooner submitting the opinions or equivalent opinions from Drs. Vraney and Brake.

## RECOMMENDATION

The Magistrate Judge RECOMMENDS the final decision of the Commissioner be REVERSED and this matter be REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for a new decision and for further administrative proceedings, without limitation and consistent with this report, that includes, a new credibility assessment, and consideration of the medical opinions of Drs. Vraney and Brake and any other evidence bearing upon the issue of the plaintiff's maximum exertional capacity.

## NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, U.S. 140 (1984).

Copies:     Counsel